NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

JUN 15 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50386 |
| Plaintiff-Appellee, | D.C. No. 2:17-cr-00479-TJH-1 |
| v. | |
| JAMES WILSON, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, District Judge, Presiding

Submitted June 10, 2021**
Pasadena, California

Before: MURGUIA and BADE, Circuit Judges, and MOLLOY,*** District Judge.

Following a one-day bench trial, James Wilson was convicted of two counts

of distributing oxycodone in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). While

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

Wilson does not dispute that the evidence shows he sold four fraudulent prescriptions, he argues that his sale of unfilled, fraudulent oxycodone prescriptions does not constitute "distribution" under the Controlled Substances Act. We review claims of insufficient evidence de novo. *United States v. Sandoval-Gonzalez*, 642 F.3d 717, 727 (9th Cir. 2011). Evidence is insufficient to sustain a conviction if, viewed in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. Section 841(a)(1) provides: "it shall be unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ." "Distribute" is defined as "to deliver (other than by administering or dispensing) a controlled substance," 21 U.S.C. § 802(11), and "delivery" as the "actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship," *id.* § 802(8). Wilson's conduct satisfies the requirements for both constructive and attempted transfer.

2. Constructive transfer under § 841(a) occurs "when a doctor steps out of the usual course of his professional duties and writes a prescription for someone for a

2

controlled substance not pursuant to a legitimate medical purpose." *United States v. Davis*, 564 F.2d 840, 844 (9th Cir. 1977); *see also United States v. Moore*, 423 U.S. 122, 124 (1975); *United States v. Feingold*, 454 F.3d 1001, 1003 (9th Cir. 2006). And, despite Wilson's attempt to muddy the waters, the offense is complete at the time the prescription is written "by creating the means by which controlled substances can be transferred." *Davis*, 564 F.2d at 845. Wilson's status as a nonphysician does not undermine his conviction because the Supreme Court has recognized that "[b]y its terms, § 841 reaches 'any person'" and is "concerned with the nature of the drug transaction, rather than the status of the defendant." *Moore*, 423 U.S. at 131, 134. Nor is the actual acquisition of drugs required. *See Davis*, 564 F.2d at 844. Here, the evidence shows that Wilson sold four fraudulent prescriptions for 30-milligram tablets of oxycodone. Because nothing more is required to complete the offense of distribution, the evidence supports a finding that Wilson constructively transferred oxycodone by prescription in violation of § 841(a)(1).

3. The evidence also supports Wilson's convictions under a theory of attempted transfer. "Attempt" requires "[1] an intent to commit the underlying offense, along with [2] an overt act constituting a substantial step towards the commission of the offense." *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1243 (9th Cir. 2014) (internal quotation marks and citation omitted) (alterations in

3

original). Wilson took specific steps to ensure his prescriptions would appear authentic and avoid raising red flags, such as making sure the "patient" ages were not suspicious; adding insurance diagnostic codes; and including additional medications. He also agreed to verify the prescriptions if the pharmacist called them in, specifically requesting that he be provided with the names and dates of birth for this purpose. Had Wilson only intended the sale of the prescriptions themselves, there would be no reason to cover the verification process. Viewed in the light most favorable to the government, *Nevils*, 598 F.3d at 1163–64, the evidence supports a finding that Wilson attempted to transfer not just prescriptions, but oxycodone.

**AFFIRMED.**